**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

L.M. (a juvenile),

    Defendant.

No. 06-CR-18-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

II.   *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . *2*

III.  *THE MERITS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

    A.    *The Crime Victims' Rights Act* . . . . . . . . . . . . . . . . . . . . . . . *3*

    B.    *The Nature of Federal Juvenile Court Proceedings:
          Are They Public?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

        1.   *General Principles* . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        2.   *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
             a.  *Factors weighing in favor of openness* . . . . . . . . . . . . . *8*
             b.  *Factors weighing in favor of closure* . . . . . . . . . . . . . *10*
             c.  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

    C.    *Application of the Crime Victims' Rights Act* . . . . . . . . . . . . . . *15*

IV.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

## I. INTRODUCTION

Before the court is the government's Motion to Permit Victims Access to Information and Proceedings ("Motion") (docket no. 7).

## II. PROCEDURAL BACKGROUND

On February 15, 2006, the government filed a five-count Juvenile Information against L.M., a seventeen year old male.[1] Each count charges that L.M. committed an act of juvenile delinquency, in violation of 18 U.S.C. § 5032. Count 1 charges that, from about 2003 to February 2006, L.M. conspired to distribute heroin. Count 2 charges that, on or about January 30, 2004, L.M. knowingly and intentionally distributed heroin to T.L., resulting in T.L.'s death. Count 3 charges that, on or about October 12, 2005, L.M. knowingly and intentionally distributed heroin to J.M., resulting in serious bodily injury to J.M. Count 4 charges that, on or about November 17, 2005, L.M. knowingly and intentionally distributed heroin. Count 5 charges that, on or about December 22, 2005, L.M. knowingly and intentionally distributed heroin. If L.M. were charged as an adult, the conduct alleged in the Juvenile Information would have been violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.

On February 17, 2006, the United States Attorney for the Northern District of Iowa, Charles W. Larson, Sr., filed a Certification to Proceed Under the Juvenile Justice and Delinquency Act, 18 U.S.C. § 5031, *et seq*. Mr. Larson, acting in delegation of authority of the United States Attorney General, *see* 28 C.F.R. § 0.57 (2006), certified that the offenses charged in the Juvenile Information are offenses described in Section 401 of the

---

[1] Pursuant to 18 U.S.C. § 5038(e), the court uses the juvenile's initials to identify him throughout this opinion, instead of his name. "Unless a juvenile who is taken into custody is prosecuted as an adult neither the name nor the picture of any juvenile shall be made public in connection with a juvenile delinquency proceeding." 18 U.S.C. § 5038(e).

Controlled Substances Act, 21 U.S.C. § 841 *et seq.*, and that there is a substantial federal interest in the case to warrant the exercise of jurisdiction. *See* 18 U.S.C. § 5032 (requiring certification). Mr. Larson represented to the court that controlled substance trafficking by juveniles in the Northern District of Iowa is a significant and growing problem; heroin distribution has resulted in the overdose deaths of more than twenty people in Eastern Iowa in the last five years.

On February 22, 2006, the government filed a Motion to Transfer Proceedings ("Motion to Transfer"). In the Motion to Transfer, the government asks the court to transfer L.M. to adult status pursuant to 18 U.S.C. § 5032. A hearing on the Motion to Transfer ("Transfer Hearing") is set for April 3, 2006. A juvenile delinquency hearing is set for April 17, 2006, in the event that the court finds that L.M. should not be tried as an adult and denies the Motion to Transfer.

On March 15, 2006, the government filed the instant Motion. The government asks the court (1) to permit the government to notify T.L.'s family of the proceedings against L.M. and (2) to allow T.L.'s family to attend "any hearings in relation to this case." On March 17, 2006, L.M. filed a Resistance. The government did not file a Reply.

### III. THE MERITS
#### A. The Crime Victims' Rights Act

As previously indicated, the government requests that the court (1) permit the government to notify T.L.'s family of the proceedings against L.M. and (2) allow T.L.'s family to attend "any hearings in relation to this case." The government's Motion is based upon 18 U.S.C. § 3771, the Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act ("CVRA").[2] In pertinent part, the

---

[2] President George W. Bush signed the CVRA into law on October 30, 2004. Pub.
(continued…)

CVRA provides:

> **(a) Rights of Crime Victims.**—A crime victim has the following rights:
>
> . . . .
>
> (2) The right to reasonable, accurate, and timely notice of any public court proceeding . . . involving the crime or of any release . . . of the accused.
>
> (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.
>
> . . . .
>
> **(b) Rights afforded.**—In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a). Before making a determination described in subsection (a)(3), the court shall make every effort to permit the fullest attendance possible by the victim and shall consider reasonable alternatives to the exclusion of the victim from the criminal proceeding. The reasons for any decision denying relief under this chapter shall be clearly stated on the record.

18 U.S.C. § 3771(a)-(b) (emphasis in original).

The parties disagree as to whether the CVRA applies to these juvenile proceedings. L.M. contends that (1) the CVRA, by its terms, only applies to *public* court proceedings and (2) federal juvenile court proceedings are not public court proceedings. The government avers that T.L.'s family members have "a real and compelling interest in being notified of these proceedings and attending the proceedings" and asks the court to

---

[2](…continued)
L. No. 108-405, 118 Stat. 2260. Neither the Supreme Court nor the Eighth Circuit Court of Appeals has construed the CVRA.

grant them "the same rights as other victims in the federal system."

If the CVRA applies, the parties agree that T.L.'s family members qualify as "crime victims" under the CVRA. A "crime victim" includes a family member of a person killed as a direct and proximate result of the commission of a federal crime. *See id.* § 3771(e). Count 2 alleges that L.M. illegally sold heroin to T.L., resulting in T.L.'s death.

The parties also agree that the government has standing to assert the CVRA rights of T.L.'s family members. The CVRA grants the United States Attorney the right to assert all rights described in 18 U.S.C. § 3771(a) on behalf of victims. *See* 18 U.S.C. § 3771(d)(1) (granting crime victim, crime victim's lawful representative and "the attorney for the Government" the right to assert the crime victim's CVRA rights). Indeed, the CVRA imposes an affirmative obligation upon the United States Attorney to ensure that the court does not infringe upon the CVRA rights of T.L.'s family members. "Officers and employees of the Department of Justice . . . shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in [18 U.S.C. § 3771(a)]." 18 U.S.C. § 3771(c)(1); *see also* 28 C.F.R. § 45.10 (outlining Department of Justice's procedures to promote compliance with crime victims' rights obligations).

The court must decide whether the CVRA applies to juvenile proceedings. "The starting point in every case involving construction of a statute is the language itself." *Musick, Peeler & Garrett v. Employers Ins. of Wausau*, 508 U.S. 286, 302 (1993) (internal quotations omitted). "If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary." *United States v. McAllister*, 225 F.3d 982, 986 (8th Cir. 2000). Absent such ambiguity, the court may not consider other indicia of legislative intent. *See id.* ("If, on the other hand, the language of the statute is ambiguous, we should consider the purpose, the subject matter, and the

condition of affairs which led to its enactment." (internal quotation omitted).

The court concludes that the CVRA only applies to "public" court proceedings. In multiple places relevant to the instant Motion, the plain language of the CVRA indicates that the CVRA only applies to public court proceedings. Crime victims are granted "[t]he right to reasonable, accurate, and timely notice of any public court proceeding," 18 U.S.C. § 3771(a)(2), and "[t]he right not to be excluded from any such public court proceeding," *id.* § 3771(a)(3). The repeated presence of the word "public" in the CVRA shows that Congress intended that the CVRA not apply to some court proceedings, namely, court proceedings which are not open to the public. *Cf. Christensen v. Harris County*, 529 U.S. 579, 583 (2000) (quoting *Raleigh & Gaston R.R. v. Reid*, 13 Wall. 269, 270, 20 L. Ed. 570 (1872) ("When a statute limits a thing to be done in a particular mode, it includes a negative of any other mode.")).[3]

Accordingly, the court holds that the CVRA rights of T.L.'s family members attach to the present juvenile proceedings only insofar as they are public court proceedings. If a particular proceeding is not a public court proceeding, the CVRA does not apply. Thus the remaining issue in this case is whether federal juvenile court proceedings are public court proceedings.

### B. *The Nature of Federal Juvenile Court Proceedings: Are They Public?*

#### *1. General Principles*

The Juvenile Justice and Delinquency Act ("JJDA"), 18 U.S.C. § 5031 *et seq.*, governs federal juvenile court proceedings. The JJDA is silent as to whether such

---

[3] The CVRA is different from a predecessor statute, which provided that "[a] victim of crime should have the right to be present at *all* proceedings related to the offense against him . . . ." 42 U.S.C. § 10606(4) (2000) (emphasis added), *repealed by* Pub. L. No. 108-405, 118 Stat. 2260, 2264 (2004).

proceedings are public. The JJDA neither expressly states that all juvenile court proceedings are public nor explicitly requires the court to seal all documents and close all hearings.

Although apparently a question of first impression in the Eighth Circuit, other federal courts of appeal have held that the JJDA gives federal district courts discretion to determine, on a case-by-case basis, whether a particular juvenile court proceeding is public. *See, e.g., United States v. Eric B.,* 86 F.3d 869, 879 (9th Cir. 1996); *United States v. Three Juveniles*, 61 F.3d 86, 90-94 (1st Cir. 1995), *cert. denied sub nom. Globe Newspaper Co. v. United States*, 517 U.S. 1166 (1996); *United States v. A.D.*, 28 F.3d 1353, 1356-62 (3d Cir. 1994). These same courts have rejected the view that federal juvenile proceedings are *necessarily* private proceedings. *See, e.g., Eric B.,* 86 F.3d at 879; *Three Juveniles*, 61 F.3d at 90-94; *A.D.*, 28 F.3d at 1356-62. The court finds this line of cases to be persuasive and, given the lack of binding precedent, adopts the reasoning of these courts.

*A.D.* is the seminal case. In *A.D.*, the Third Circuit Court of Appeals seized upon the fact that Congress did not explicitly mandate closed hearings or sealed records under all circumstances.[4] *A.D.* 28 F.3d at 1361. To the contrary, the JJDA states that the "court may be convened at any time and place within the district, in chambers or otherwise." 18 U.S.C. § 5032. The Third Circuit reasoned that this provision

> evidences a congressional expectation that district judges will

---

[4] The JJDA is unlike some state statutes, which expressly provide that the general public shall be excluded from all juvenile proceedings. *See, e.g.,* S.D. Codified Laws § 26-7A-36 (requiring, as a general rule, closed hearings), Wis. Stat. § 48.299(1)(1) (same); Wyo. Stat. Ann. § 14-6-224 (same). *But see* Iowa Code § 232.39 (permitting closure only if "the possibility of damage or harm to the child outweighs the public's interest in having an open hearing").

> exercise their discretion when they decide where to hold hearings under the Act. Moreover, the addition of "in chambers or otherwise" suggests that this discretion is to include a decision regarding the availability and degree of public access . . . .

*A.D.*, 28 F.3d at 1359; *accord Eric B.*, 86 F.3d at 879 ("To interpret § 5032 [to require the district court to close all proceedings without exception] would render superfluous the distinction between the words 'in chambers' and 'or otherwise.'").[5]

To decide whether a particular hearing should be open to the public or whether a particular record should be sealed, the court must exercise its discretion on a case-by-case basis and balance the competing interests at stake. *See A.D.*, 28 F.3d at 1361. On the one hand, the court must weigh "the need to avoid embarrassing and humiliating juveniles, to obtain evidence about delicate matters, and not to affect the rehabilitation of juveniles adversely." *Id*. On the other hand, the court must weigh the public's right to know about and attend the proceedings. *See id*.

## 2. Application

### a. Factors weighing in favor of openness

The public has a strong interest in learning about this case. L.M. is accused of committing a number of delinquent acts. If L.M. were charged as an adult, he would be charged with five felonies. The public in the Northern District of Iowa has an especially keen interest in this matter because (1) L.M. allegedly killed and seriously harmed young members of the local community and (2) controlled substance trafficking by juveniles is

---

[5] The Third Circuit Court of Appeals also rejected the government's argument that various confidentiality provisions in 18 U.S.C. § 5038(c) and (e) evince a Congressional intent that all juvenile proceedings and records must be closed to the public view. *A.D.*, 28 F.3d at 1359-61; *accord Three Juveniles*, 61 F.3d at 90-92.

a significant and growing problem in the District.

Open proceedings also assure the public that the court's business is conducted fairly. Public scrutiny "discourages perjury, misconduct, and decisions based upon partiality or bias." *United States v. Thunder*, 438 F.3d 866, 867 (8th Cir. 2006) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569 (1980)). Although most community members do not attend court proceedings, "the knowledge that they could and that others do fortifies the public's confidence in [their] results." *Id.* (citing *Press-Enter. Co. v. Superior Court of Cal.*, 464 U.S. 501, 508 (1984)). Notwithstanding a history of closed doors in juvenile proceedings throughout the country, *see Three Juveniles*, 61 F.3d at 90 n.4, secret court proceedings contravene a basic tenet of our republic that the government is open to public view and scrutiny. *Cf. Thunder,* 438 F.3d at 867 ("We have an open government, and secret trials are inimical to the spirit of a republic . . . ."). [6]

In addition to the interests they share with the general public, the crime victims in this case have an especially strong interest in public proceedings. The entire case is presently under seal, therefore, the government represents to the court that:

> Thus far the parents of T.L. are not even aware that someone has been arrested and charged with causing his death. They continue to struggle with the belief that no action has been taken to hold responsible those who caused the death of the victim. The victim was a young man when he died as a result of using heroin supplied by [L.M.].

Presumably, the same holds true of J.M., a young person injured as a result of using

---

[6] Generally, open court proceedings also redound to the benefit of the defendant. *Id*. "[P]rotection of the accused is one of the strongest justifications for allowing public access to the proceeding." *Three Juveniles*, 61 F.3d at 92. Here, however, L.M. resists public access. "When the accused juvenile, on advice of counsel, opposes public access, this justification is vitiated." *Id*.

heroin which L.M. allegedly supplied.

### b. *Factors weighing in favor of closure*

Weighing in favor of closed hearings is the fact that an "essential element" of the JJDA is the "[p]rotection of the juvenile from the stigma of a criminal record by preserving the confidentiality of proceedings." *Three Juveniles*, 61 F.3d at 90; *accord United States v. McQuade Q*, 403 F.3d 717, 719 (10th Cir. 2005) (recognizing that one of the purposes of the JJDA is "'to avoid the stigma of a criminal conviction'") (quoting *United States v. Anthony Y.*, 172 F.3d 1249, 1251-52 (10th Cir. 1999)). In the United States, there is a "long, entrenched, and well-founded tradition of confidentiality regarding juvenile proceedings . . . ." *Three Juveniles*, 61 F.3d at 90 n.4. *But see, e.g.,* Iowa Code § 232.39 (2005) (holding that juvenile proceedings are generally open to the public). As the late Justice Rehnquist stated:

> It is a hallmark of our juvenile justice system in the United States that virtually from its inception at the end of the last century its proceedings have been conducted outside of the public's full gaze and the youths brought before our juvenile courts have been shielded from publicity. This insistence on confidentiality is born of a tender concern for the welfare of the child, to hide his youthful errors and bury them in the graveyard of the forgotten past.

*Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 107 (1979) (Rehnquist, J., concurring) (citations and internal quotation marks omitted). Closing the hearings to the public will arguably prevent any stigmatization of L.M.

Another purpose of the JJDA is "'to encourage treatment and rehabilitation.'" *McQuade Q*, 403 F.3d at 719 (quoting *Anthony Y.*, 172 F.3d at 1251-52); *In re Sealed Case (Juvenile Transfer),* 893 F.2d 363, 367 (D.C. Cir. 1990) (same); *cf. A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 854 (8th Cir. 1995) (recognizing that generally juvenile justice

systems have a rehabilitative purpose and not a penal purpose). "To effectuate its rehabilitative purposes, the [JJDA] requires inquiry in to the most sensitive aspects of a juvenile's life." *A.D.*, 28 F.3d at 1361. *See, e.g.*, 18 U.S.C. § 5032 (requiring court to consider certain evidence in transfer proceedings, including the juvenile's social background, intellectual development and psychological maturity). L.M. submits that open hearings and records would make public some of the most sensitive aspects of his life and could interfere with any subsequent treatment and rehabilitation.

### *c. Analysis*

### *Records*

The court finds that the records of these juvenile proceedings should be, as a general rule, open to public scrutiny. The public's right to know and the strong interests of the victims outweigh any concern about stigmatizing L.M. or endangering his chances of rehabilitation. L.M. is seventeen-and-one-half years old and on the verge of adulthood. The dangers of stigmatization and interference with rehabilitation would weigh more heavily in favor of sealed records if L.M. were a younger adolescent or a child. Moreover, for the most part, the records in this case do not contain any information concerning any sensitive aspect of L.M.'s life. Instead, the docket sheet consists of entries which largely concern routine court matters, such as scheduling hearings.

It is important to recognize that the JJDA has a built-in mandatory privacy safeguard that minimizes the dangers of stigmatizing L.M. and endangering his chances for rehabilitation. The JJDA forbids the court and the parties from releasing L.M.'s full name or picture to the public. *See* 18 U.S.C. § 5038(e) ("Unless a juvenile who is taken into custody is prosecuted as an adult neither the name nor the picture of any juvenile shall be made public in connection with a juvenile delinquency proceeding."). In light of these statutorily imposed redactions, the danger of stigma is lessened.

Matters might be different if the public knew L.M.'s identity. *Cf. Three Juveniles*, 61 F.3d at 93-94 (finding district court did not abuse its discretion in closing proceedings because (1) there was extensive media coverage of the proceedings, (2) the media had interviewed one of the juveniles, (3) the juveniles had been identified several times in the press and (4) many details of their alleged conduct had already been disclosed in a related criminal prosecution). However, there is no evidence that the press has discovered L.M.'s identity. L.M.'s case is not a case where sealing all of the records is necessary to preserve confidentiality and to avoid stigma. *Cf. id.* (noting that, because the press had disclosed the juveniles' identities, closure was the least restrictive alternative).

In light of the foregoing, all records in this case shall be unsealed, so long as all references to L.M.'s name and all pictures of L.M. are first redacted. 18 U.S.C. § 5038(e). The Clerk of Court shall make these redactions. The court has reviewed the docket and finds the following redactions are warranted:

> (1) The Clerk of Court shall redact L.M.'s full name from the Warrant (docket no. 2), Praecipe for Warrant (docket no. 2), Order to Seal Case (docket no. 3), Certification (docket no. 4) and Return of Service on Warrant (docket no. 11). In the place of L.M.'s name, the Clerk of Court shall enter the initials "L.M."
>
> (2) The Clerk of Court shall redact the names, signatures, address and phone number of L.M.'s parents in the Order Setting Conditions of Release (docket no. 6), Return of Service on Warrant (docket no. 11) and Summons (docket no. 15). In the place of L.M.'s parents' names, the Clerk of Court shall enter their initials.
>
> (3) The Clerk of Court shall redact L.M.'s picture from Government Exhibit #2 in the government's Petition for Revocation of Pre-Trial Release (docket no. 13).

All documents in the court file that are routinely sealed, such as financial affidavits (docket no. 5), shall remained sealed. If either party believes that any other document should be sealed or redacted, that party should immediately file a motion with the court.

*Hearings*

Balancing the same factors set forth above, however, the court concludes it is appropriate to close the upcoming Transfer Hearing to the public. At the Transfer Hearing, the court must decide whether to transfer L.M. to adult status. In making this decision, the court must consider six factors: (1) L.M.'s age and social background; (2) the nature of the alleged offense; (3) the extent and nature of L.M.'s prior delinquency record; (4) L.M.'s present intellectual development and psychological maturity; (5) the nature of past treatment efforts and L.M.'s response thereto; and (6) the availability of programs designed to treat L.M.'s behavioral problems. 18 U.S.C. § 5032. An inquiry into the foregoing factors will necessarily require the court to delve into a number of sensitive aspects of L.M.'s life.

To determine whether to grant the government's Motion to Transfer, the court will need to conduct a searching inquiry into L.M.'s psychological makeup, social background and intellectual ability. 18 U.S.C. § 5032. The court will also consider L.M.'s prior juvenile history, including evidence of prior bad acts. *Id.*; *see also United States v. L.W.O.*, 160 F.3d 1179, 1181 (8th Cir. 1998) (holding that evidence of prior bad acts is admissible to prove social background, intellectual development, psychological maturity, the nature of past treatment efforts and response thereto). A transfer hearing is unlike a delinquency hearing, where the focus is not on *the juvenile*, but rather on the *acts* the juvenile allegedly committed. It is these acts—not L.M.'s personal background and profile—in which the public and the victims have a compelling interest. Making L.M.'s private matters public can only serve to humiliate and stigmatize him, and thereby appeal

13

to the trifling interests of the public.

Although the court does not know precisely what evidence the parties will present at the hearing, it seems clear that the thrust of the evidence will concern private, sensitive matters concerning L.M.'s ability to be rehabilitated. For example, the government has indicated that it intends to attempt to admit into evidence L.M.'s state court juvenile records.[7] Some of these records are presently under seal in state court; the government recently requested and obtained a subpoena from this court to obtain them. Accordingly, the court shall exercise its discretion to conduct the Transfer Hearing "in chambers," i.e., closed to the public, including the victims and their families. 18 U.S.C. § 5032.

The court recognizes the admonition of the Eighth Circuit Court of Appeals that the court must study all reasonable alternatives before deciding to close a hearing or seal a record. *See Thunder*, 438 F.3d at 867-68 (holding that, in Sixth Amendment context, the district court should consider the availability of reasonable alternatives to closure and ensure that the closure is narrowly tailored) (citing *Waller v. Georgia*, 467 U.S. 39, 48 (1984)). The court has considered the availability of less restrictive options, but finds them to be impracticable. Unlike other hearings in which the court could have a confidential bench conference or take other measures when the occasional confidential matter arose, the focus at a transfer hearing is almost exclusively on matters the court deems confidential.

The court finds the public does have the right to know the date, time and location

---

[7] Title 18, United States Code, Section 5032 states that "[a] juvenile shall not be transferred to adult prosecution . . . until any prior juvenile court records of such juvenile have been received by the court [or their unavailability is explained]." 18 U.S.C. § 5032. The filing of a juvenile's prior state court records in federal court is a jurisdictional prerequisite to proceeding against a juvenile as an adult in federal district court. *United States v. Juvenile Male*, 923 F.2d 614, 620 (8th Cir. 1991).

of the Transfer Hearing. The public is also entitled to know the result[8] of the Transfer Hearing as soon as it is made. Therefore, the court shall immediately make all orders scheduling the Transfer Hearing public.

The court shall reserve ruling on whether all other hearings in this case should be open to the public. As previously indicated, the JJDA gives federal district courts discretion to determine, on a case-by-case basis, whether a particular juvenile court proceeding is public. *See, e.g., Eric B.*, 86 F.3d at 879; *Three Juveniles*, 61 F.3d at 90-94; *A.D.*, 28 F.3d at 1356-62. If the court decides to transfer L.M. to adult status, all future hearings would be public and thus the remainder of the government's motion would be moot. The court, therefore, finds it is inappropriate at this time to decide whether such hearings are public. *Cf. Texas v. United States*, 523 U.S. 296, 300 (1998) (refraining from deciding an issue not yet fit for adjudication).

## C. *Application of the CVRA*

In light of the foregoing, the court shall grant in part, deny in part and reserve ruling on in part the government's Motion. The court shall grant the government's request to notify T.L.'s family of the proceedings against L.M. 18 U.S.C. § 3771(a)(2). The court shall unseal this case, with the necessary redactions set forth elsewhere in this order. The government's request to allow T.L.'s family to attend "any hearings in relation to this case" shall be denied in part. T.L.'s family shall be granted "[t]he right not to be excluded from any . . . *public* court proceeding." *Id.* § 3771(a)(3) (emphasis added). The Transfer Hearing shall be closed to the public, including T.L.'s family. The court shall reserve ruling on whether other hearings in this case shall be conducted in public.

The government shall inform all of the crime victims of their CVRA rights. 18

---

[8] The public is not necessarily entitled to access the order deciding the Transfer Hearing, because the court will likely analyze confidential matters.

U.S.C. § 3771(c)(1); *see also id.* § 3771(b) (requiring court to take affirmative action to ensure a crime victim's access to proceedings).[9] The government shall also inform the crime victims of their rights to appeal this order. *See id.* § 3771(d)(3) (providing a crime victim who is denied relief under the CVRA the right to a writ of mandamus to the court of appeals and a written decision from the court of appeals within 72 hours).

## IV. CONCLUSION

**IT IS THEREFORE ORDERED THAT:**

(1) The court **GRANTS IN PART, DENIES IN PART AND RESERVES RULING ON IN PART** the government's Motion to Permit Victims Access to Information and Proceedings (docket no. 7);

(2) The court grants the government's request to notify T.L.'s family of the proceedings against L.M.;

(3) The court denies in part and reserves ruling on in part the government's request to allow T.L.'s family to attend "any hearings in relation to this case." T.L.'s family is not permitted to attend the Transfer Hearing, which shall be closed to the public;

(4) The Clerk of Court is directed to list the Transfer Hearing on the court's calendar but shall note that the hearing is closed to the public;

(5) The Clerk of Court is directed to unseal this case, with the following exceptions:

> (a) The Clerk of Court is directed to redact L.M.'s full name from the Warrant (docket no. 2), Praecipe for Warrant (docket no. 2), Order to Seal Case (docket no. 3), Certification (docket no. 4) and Return of Service on Warrant (docket no.

---

[9] The CVRA provides the same rights to J.M. as it does to T.L.'s family, as J.M. also qualifies as a "crime victim" under the CVRA. *See* 18 U.S.C. § 3771(e) (defining "crime victim" to include "a person directly and proximately harmed as a result of the commission of a Federal offense"). It is not known why the government does not seek to inform J.M. of these proceedings.

16

11). In the place of L.M.'s name, the Clerk of Court is directed to enter the initials "L.M."

(b) The Clerk of Court is directed to redact the names, signatures, address and phone number of L.M.'s parents in the Order Setting Conditions of Release (docket no. 6), Return of Service on Warrant (docket no. 11) and Summons (docket no. 15). In the place of L.M.'s parents' names, the Clerk of Court is directed to enter their initials.

(c) The Clerk of Court is directed to redact L.M.'s picture from Government Exhibit #2 in the government's Petition for Revocation of Pre-Trial Release (docket no. 13).

(d) The Clerk of Court is directed to seal all documents that are routinely sealed in criminal matters, such as financial affidavits (docket no. 5).

(6) In the future, no filings or orders in this case will be sealed absent a specific court order; and

(7) The government is directed to inform all of the crime victims of their CVRA rights, including their rights to appeal this order.

**IT IS SO ORDERED.**

**DATED** this 31st day of March, 2006.

*[signature]*
LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA